**SO ORDERED.**

**SIGNED this 06 day of May, 2011.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SURF CITY INVESTMENTS, LLC,              CHAPTER 11
                                         CASE NO. 11-01398-8-RDD
    DEBTOR

**ORDER DENYING MOTION TO DISMISS CASE**

Pending before the Court is the Motion to Dismiss Chapter 11 Bankruptcy Case Pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 1112, 305 and 105 filed by Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association ("Wells Fargo") on March 9, 2011 (the "Motion") and the Response to Motion to Dismiss Chapter 11 Bankruptcy Case Pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 1112, 305 and 105 filed by Surf City Investments, LLC (the "Debtor") on March 28, 2011 (the "Response").  A hearing was held in Wilson, North Carolina on March 30, 2011 to consider the Motion and the Response.

**BACKGROUND**

On February 24, 2011, three legal entities converted and merged, resulting in the formation of the Debtor: (1) Surf City Investments, Inc. ("SCI"), a North Carolina corporation, (2) Yow's Motel Investment, LLC ("YMI"), a North Carolina limited liability company; and (3) Beach House

Marina, LLC ("BHM"), a North Carolina limited liability company. On February 24, 2011, each entity filed its Articles of Merger. Immediately thereafter, the Debtor filed its Articles of Organization. The Debtor purports to be a member-managed limited liability company and has three members identified in its Articles of Organization: Lionel Mark Yow ("Mark"), who owns 50% of the Debtor, Lionel Leon Yow ("Leon"), who owns 15% of the Debtor; and Jennifer Leech ("Jennifer"), who owns 35% of the Debtor. The Debtor is engaged in the business of developing real property in Pender County, North Carolina and owns a motel and marina property.

On the same day as its formation, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. Douglas Leech ("Mr. Leech") signed the bankruptcy petition as a member manager of the Debtor.

At the hearing, Mark testified that he, Leon, Jennifer, and Mr. Leech were all involved in the process of preparing the bankruptcy petition. However, the members designated Mr. Leech to sign the petition as manager because Leon's medical issues prevented him and the other members from being present when the petition was signed. Mark further testified, that on February 23, 2011, a meeting was held where the members unanimously authorized Mr. Leech to act on behalf of the Debtor and authorized him to sign the petition.

Subsequently, the Debtor filed an amended petition on March 22, 2011. The amended petition was signed by Mark on behalf of the Debtor as a member manager.

On March 24, 2011, a unanimous corporate resolution was adopted. The corporate resolution documents certain pre-petition discussions concerning the appointment of Mr. Leech as manager and ratifies any action taken by Mr. Leech on behalf of the business prior to the filing of the petition and during the pendency of the Chapter 11 case.

As to the decision of merging the three entities, Mark testified that he, Leon, and Jennifer, thought it would be in the best interests of the related entities because it would lower the overall operational and administrative costs, and management of one entity rather than three would be less cumbersome.

Prior to the petition date, each entity owned certain real property including a motel and marina property. Income was generated from the rental and sale of boat slips and the operations of the motel and marina. The parties agree that YMI and BHM would have been single asset real estate debtors pursuant to 11 U.S.C. § 101(51B), but for the merger of the SCI, YMI and BHM.

Wells Fargo holds a promissory note, executed by SCI, YMI and BHM as co-borrowers, in the principal amount of $9,000,000.00. The promissory note is secured by certain real property and other rights as described in a deeds of trusts. Two modifications to the promissory note modified the interest rate, allowed for partial release of real property collateral and required the guarantors to reaffirm their guaranties of the note.

The three entities defaulted under the terms of the note by failing to submit timely payments. Wells Fargo filed litigation against the three entities to collect amounts due under the note and initiated foreclosure proceedings. Multiple foreclosure sales were scheduled for February 25, 2011. As of the petition date, the Debtor owed Wells Fargo the principal amount of $4,350,352.32, accrued interest of $165,241.89, and late charges of $5,433.25, plus fees, costs and expenses.

In its schedules, the Debtor listed real estate assets consisting of 4.83 acres in Surf City, North Carolina; 2.44 acres and .43 acres known as Tract 3, Map Bk 45, Pg 1, Pender County Registry; 93 dry stack boat slips and Oceanfront Hotel located in Surf City, North Carolina. Together, the properties were listed on Schedule A with a current market value of $6,299,643.00.

The debt to Wells Fargo is listed in the amount of $4,332,589.50. The Debtor also listed a secured debt owed to Mr. Leech in the amount of $42,039.00 which is secured by a second deed of trust on the Oceanfront Hotel located in Surf City, North Carolina. The Oceanfront Hotel has an alleged market value of $253,249.00.

The Debtor contends there is equity in the collateral held by Wells Fargo and Wells Fargo believes it is a marginally oversecured creditor pursuant to 11 U.S.C. § 506.

**DISCUSSION**

*I. Was the Debtor's bankruptcy filing properly authorized?*

Pursuant to the Motion, Wells Fargo requests that this case be dismissed because the voluntary petition was improperly and falsely signed. Therefore, Wells Fargo argues the Court lacks jurisdiction under 28 U.S.C. § 1334. Additionally, Wells Fargo argues the case should be dismissed for "cause" pursuant to the Court's powers under 11 U.S.C. §§ 1112, 105 and 305.

In response, the Debtor argues that the filing of the petition was authorized by the members of the Debtor and was a valid filing. Additionally, the Debtor argues that Wells Fargo failed to carry its burden of demonstrating that "cause" existed for dismissing the Debtor's case.

Whether an individual is properly authorized to institute a bankruptcy proceeding on behalf of a legal entity is a matter of state law. *In re Cabernet Holdings LLC*, No. 10-50602C-11, 2010 WL 2540115 *2 (Bankr. M.D.N.C June 21, 2010) (citing *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997)).

Under N.C. Gen. Stat. § 57C-3-20, management is vested jointly in all members of a limited liability company, unless the company's articles of organization or written operating agreement provide otherwise. Additionally, a bankruptcy court cannot establish jurisdiction over a petitioning

entity where the individual instituting the proceeding lacks authority under state law and the corporate governing instruments. *See Price v. Gurney*, 324 U.S. 100, 106 (1945).

The Debtor's Articles of Organization provide that all of the members, by virtue of their status as members, shall be managers of the limited liability company. Mark, Leon, and Jennifer were designated as initial members of the limited liability company in the Articles of Organization. However, the voluntary petition was signed by Mr. Leech as a manager of the Debtor. Mr. Leech was not a member of the Debtor at the time the petition was signed. Therefore, the filing of the bankruptcy petition without member approval and signature was not authorized under North Carolina law, by the Articles of Organization or an operating agreement.

The Debtor presented testimony of pre-petition discussions which took place between the members of three entities, whereby Mr. Leech was appointed to sign the bankruptcy petition on behalf of the Debtor. Notwithstanding that it may be argued that the meeting was a nullity because it took place prior to the Debtor's formation as a legal entity, the Court believes that the Debtor has presented sufficient evidence of its intention to ratify the petition.

Traditionally, courts adhere to principles of equity and fairness when determining whether a case should be dismissed. *In re Audubon Quartet, Inc.*, 275 B.R. 783 (Bankr. W.D. Va. 2002). Here, the Debtor has taken numerous steps to establish that it authorized the filing of the petition. All of the Debtor's members have not only authorized the petition orally, but have also signed a corporate resolution to that extent. Further, the Debtor subsequently filed an amended petition signed by a member manager of the Debtor. At the hearing, both the Debtor and Wells Fargo recognized that under corporate law, certain company actions may be ratified by certain after the fact

events that may have already occurred. Therefore, the Court finds that the bankruptcy petition was properly authorized and subsequently ratified by the members of the Debtor.

## *II. Should the petition be dismissed for "cause" pursuant to 11 U.S.C. §§ 1112, 105 and 305?*

Wells Fargo argues that the Debtor's case should be dismissed for "cause" pursuant to 11 U.S.C. §§ 105, 305 and 1112, among other reasons because the Debtor was created in bad faith and that the Debtor's formation was a series of fraudulent transfers under North Carolina law. Additionally, Wells Fargo asserts that but for the conversion of YMI, BHM and SCI into the Debtor, two of the co-borrowers, YMI and BHM, would have been single asset real estate entities as defined in 11 U.S.C. § 101 (51B) and subject to the specific limitations and provisions for single asset real estate entity cases.

In response, the Debtor argues that Wells Fargo has failed to carry its burden in demonstrating that "cause" exists for dismissing the Debtor's case. Furthermore, at the hearing, the Debtor conceded that it will comply with the single asset realty entity provisions of § 362 throughout the duration of the Debtor's case as would have been applied if YMI and BHM had filed separate petitions.

While the Bankruptcy Code does not specifically proscribe a "good faith filing" requirement applicable to Chapter 11 cases, courts have consistently held that "generally, an implicit pre-requisite to the right to file [a Chapter 11 petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal. . . ." *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (citations omitted).

The Fourth Circuit utilizes a two prong test for determining whether a Chapter 11 petition should be dismissed for lack of good faith. *Id.* at 700-01. A Chapter 11 case may be dismissed for

lack of good faith if the movant can show both: (1) "the objective futility of any possible reorganization" and (2) "the subjective bad faith of the petitioner in invoking this form of bankruptcy protection." *Id.* at 694. The Fourth Circuit reasoned that:

> [s]uch a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold.

*Id.* at 707.

The objective futility prong is "designed to insure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled [debtor]." *Id.* at 701 (citing *In re Coastal Cable TV, Inc.*, 709 F.2d 762, 765 (1st Cir. 1983) (internal quotation marks omitted)).

The subjective bad faith prong is designed to "insure that the petitioner actually intends to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business." *Id.* at 702 (citing *In re Victory Constr. Co.* 9 B.R. 549, 564 (Bankr. C.D.Cal. 1981) (*Victory I*) (internal quotation marks omitted)).

Wells Fargo bears the burden of demonstrating both objective futility and subjective bad faith by a preponderance of the evidence. *In re Player Wire Wheels, Ltd.*, 421 B.R. 864, 868 (Bankr. N.D. Ohio 2009).

The Court finds that Wells Fargo failed to carry its burden of demonstrating either objective futility or subjective bad faith. The *Carolin* court adopted various factors, originally considered by the Fifth Circuit when determining whether bad faith was present. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). Among the factors to be considered are: (1) whether the debtor has

only one asset, (2) whether the asset is encumbered by the secured creditor's lien, (3) whether the only employees of the debtor are principals, (4) whether the debtor's cash flow is insufficient, (5) whether the debtor has only a few unsecured creditors with relatively small claims, (6) whether the debtor's asset is in foreclosure, and (7) whether bankruptcy is the only means of forestalling the foreclosure. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986). While these factors are indicative of bad faith, they are not conclusive. As the Fourth Circuit recognized in *Carolin*, the determination of bad faith is made by considering the "totality of the circumstances" as "[t]he dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing particular facts into previously identified patterns is obvious, and must be guarded against." *Carolin Corp. v. Miller*, 886 F.2d at 701.

Mark testified to several legitimate reasons for the Debtor invoking the protections available under the Code. He testified that the entities were merged on the eve of bankruptcy to provide for administrative convenience. The three entities were closely related and instead of filing three cases, all of which have Wells Fargo as the primary secured creditor, the Debtor instead only had to file one case, thereby saving additional costs. Additionally, the Debtor represented that it intends to continue to maintain and conduct business out of the marina and the motel. The Debtor has also expressly assumed all of the liabilities of the three entities and intends to make payments to Wells Fargo. Here, it appears the Debtor's motivation to file this bankruptcy proceeding was to efficiently reorganize the Debtor and the decision to merge the entities was to lower administrative costs. Such findings in this circumstance do not rise to the level of subjective bad faith.

Further, the Court finds that Wells Fargo has also failed to carry its burden of proof of demonstrating the Debtor's case is objectively futile. Wells Fargo argues the Debtor's case is

objectively futile because there is an absence of a reasonable likelihood of rehabilitation or reorganization. As the Fourth Circuit noted, "it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold." *Carolin Corp. v. Miller*, 886 F.2d at 701.

Wells Fargo alleges that the Debtor is experiencing substantial and continuing losses to the estate in that its income is insufficient to cover its monthly operating expenses. The Debtor argues that there is evidence that a confirmable plan could be filed and that reorganization under Chapter 11 is a realistic possibility. Joel Bartis, Vice President of Wells Fargo, testified that in late January of 2011, he met with Mark, Lionel, and Jennifer. At the meeting, he was presented with a business plan which proposed to sell the beach front property and then use the proceeds to fund a pool and clubhouse. The Debtor believes that building the pool and clubhouse will enable it to sell the boat slips at an accelerated rate thereby generating additional revenue. Mr. Bartis stated that at that time, the bank was unable to agree to the proposed terms. When questioned as to why Wells Fargo would not agree to these terms, he responded that they were unwilling to consider the proposal with the current management in place. However, he stated that the proposal may have been considered if different management had been in place.

Wells Fargo possesses a first lien priority on all real estate assets. Mr. Bartis, indicated that the proposal to merge the three related entities was presented to him as early as January 2011. Before the three entities were merged, they had business relationships with each other. The marina serviced the boats. The motel rented rooms and boats were dry docked. Testimony indicated that the revenues were not enough to cover the expenses. However such is true for many Chapter 11 debtors at the outset of a case. These findings do not rise to the level of objective futility at the

outset of this case.   Additionally, the Debtor has conceded that it will comply with the single asset real estate provisions of § 362.

Therefore, the motion to dismiss is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**